**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

KARL TAYLOR

                                            Plaintiff,

                                                                        1:25-cv-00951 (BKS-ML)

v.

DOUGLAS A. COLLINS in his official capacity as
Secretary, U.S. Department of Veterans Affairs,[1]

                                            Defendant.

---

**Appearances:**

*Plaintiff pro se:*
Karl Taylor
Schenectady, NY 12303

*For Defendant:*
Emer Stack
Assistant United States Attorney
United States Attorney's Office
Northern District of New York
100 South Clinton Street
Syracuse, NY 13261

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff pro se Karl Taylor brings this action under Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. §

701 *et seq.*, against the Secretary of the United States Department of Veterans Affairs in his

official capacity, arising from events occurring during Plaintiff's employment with the Albany

---

[1] The Court has substituted the current Secretary of the United States Department of Veterans Affairs, Douglas A. Collins as the Defendant pursuant to Federal Rule of Civil Procedure 25(d). The Clerk of Court is directed to amend the caption accordingly.

Stratton Veterans Affairs Medical Center. (Dkt. No. 1). Defendant moves to dismiss Plaintiff's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 21). The motion has been fully briefed. (Dkt. Nos. 21, 24, 25). For the reasons that follow, Defendant's motion is granted in part and denied in part.

## II.    FACTS[2]

Plaintiff was employed as a food service worker at the Albany Stratton Veterans Affairs Medical Center from March 2020 through May 2023. (Dkt. No. 1, at 2; *see also* Dkt. No. 1-13, at 1). He alleges that his disabilities include Post-Traumatic Stress Disorder (PTSD) and "physical impairment affecting [his] elbow." (Dkt. No. 1, at 17). He attaches to his complaint requests for reasonable accommodations for these impairments, (*see* Dkt. Nos. 1-4 to 1-6), and claims that he "was granted reasonable accommodations for a documented medical condition." (Dkt. No. 1, at 2). According to Plaintiff, his "Reasonable Accommodation for PTSD explicitly allowed [him] to leave work when under high stress or experiencing symptoms," (*id.* at 19); he does not provide any information regarding the response to his requests for accommodations for his elbow impairment. He alleges that he "filed an internal EEO complaint," (*id.* at 2), but does not state when he filed this complaint or describe the complaint. He further alleges that after he resigned from his position, he filed an EEOC complaint alleging retaliation, disability discrimination, and violations of the Rehabilitation Act. (*Id.* at 3). The agency issued a final order on May 29, 2025, finding no discrimination and dismissing Plaintiff's claims. (*Id.*).

Plaintiff complains about a variety of incidents occurring "between late 2022 through May 2023," including the following. (*Id.* at 21).

---

[2] These facts are drawn from the complaint and the exhibits attached thereto. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020), but does not accept as true any legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.    False Accusations

Plaintiff alleges that his supervisors and coworkers made false accusations against him at various times. For instance, Plaintiff claims that his coworker falsely accused him of taking photographs of her, which led to two formal investigations, neither of which uncovered evidence implicating Plaintiff. (*Id.* at 12). Due to these accusations, the coworker's significant other "aggressively confronted [Plaintiff] after work" on October 28, 2022. (*Id.* at 6.) While Plaintiff was driving, the man followed Plaintiff with his car, cut Plaintiff off, and came out of his car brandishing a tire iron. (*Id.*). The man falsely accused Plaintiff of taking photographs of the coworker (*Id.*). Plaintiff alleges that he reported the incident to his supervisor, Regina Latourette, who "refused to discuss the matter" and later falsely claimed that Plaintiff was "harassing [his] co-worker by taking pictures." (*Id.*; *see also* Dkt. No. 1-24).

On February 5, 2023, Plaintiff alleges that he and a union representative were falsely accused by a supervisor of gossiping about that supervisor's failure to pass a ServSafe test. (Dkt. No. 1, at 6). Plaintiff suggested reporting the false accusation to Supervisor Latourette, but the union representative and the supervisor declined. (*Id.*).

Plaintiff alleges that "[o]n one [unspecified] occasion," he was falsely accused of stealing a seafood salad sandwich and that even though the police were called, they did not interview Plaintiff. (*Id.* at 5). Plaintiff believes that his supervisor, Valerie Griffin, made this accusation to retaliate against him for reporting her husband to the police for "his suspicious behavior." (*Id.*).

### B.    Threats of Discipline

Plaintiff alleges that he was threatened with discipline by his supervisors on multiple occasions. Plaintiff recounts two instances when he was threatened for being written up as

"AWOL,"[3] however he did not receive any formal discipline. On October 25, 2022, Plaintiff claims that he "was told" that Supervisor Griffin recorded him as being AWOL, even though he informed her that he was going to the restroom. (*Id.* at 5). A different supervisor later assured him that he would not be written up for the incident. (*Id.*). Supervisor Griffin "has done similar things specifically on Tuesdays, which is the end of [his] work week—creating anxiety and hostility that interferes with [his] ability to perform." (*Id.*).

On another undated occasion, Plaintiff alleges that he called his supervisor, Phillip Benner, to inform him that he could not make his shift due to heavy snowfall, and that Supervisor Benner left him a message threatening to write him up for being AWOL. (*Id.* at 6–7). However, no formal disciplinary action was taken against Plaintiff. (*Id.*).

On January 9, 2023, Plaintiff claims that Supervisor Latourette told him, "If you plan on moving up in this kitchen, you can't keep going home. In fact, it could get you fired." (*Id.* at 19). Plaintiff found this statement to be "deeply troubling because [his] Reasonable Accommodation for PTSD explicitly allowed [him] to leave work when under high stress or experiencing symptoms." (*Id.*).

On or about March 20, 2023, and "many other occasions," Plaintiff was threatened with disciplinary action. (*Id.* at 13). According to Plaintiff, "[w]hile the discipline may not have been formally imposed, the threat itself was sufficient to trigger [his] diagnosed PTSD." (*Id.*).

## C.     Interference with Leave and Other Scheduling

On or about February 24, 2023, Plaintiff alleges that he "called in" to visit the employee health center at the hospital due to "a mental health condition" and received medical clearance to

---

[3] Plaintiff attached a document to his complaint which indicates that "AWOL" stands for "Absence Without Leave." (*See* Dkt. No. 1-17, at 2).

return to work. (*Id.* at 13–14). However, Supervisor Benner refused to accept Plaintiff's medical clearance over the weekend but did accept it on the following Monday. (*Id.* at 13). Plaintiff was paid for Saturday and Sunday. (*Id.*). In addition, Supervisor Benner falsely accused him of not returning to work after he received clearance; instead, Plaintiff alleges that he was "sent home and instructed to return on Monday with proper clearance." (*Id.*).

Plaintiff alleges that he requested leave on another occasion to attend a victim impact statement related to a family member who had been the victim of a crime. (*Id.* at 7; *see also* Dkt. No. 1-10). Plaintiff's leave request was denied, but he attended the meeting anyway. (Dkt. No. 1, at 7). Although Plaintiff was reprimanded, he was not formally disciplined. (*Id.*). In 2023, Plaintiff requested leave again related to the victim impact statement. (*Id.*). Supervisor Latourette "confronted [Plaintiff] in the break room" and informed him that due to his "past actions," she anticipated that he would take leave even if his leave request was denied. Plaintiff claims that she "issued multiple threats and made clear consequences." (*Id.*). He believes that Supervisor Latourette discussed this issue with Plaintiff "publicly in the breakroom" to enable Supervisor Griffin to eavesdrop on the conversation, despite Plaintiff's request "to not have Miss Griffin involved in any of [his] personal issues." (*Id.*).

Plaintiff also claims that his supervisors interfered with scheduling changes. An employee who works alongside Supervisor Latourette offered him a schedule change, and he agreed. (*Id.* at 8). When he followed up with Supervisor Griffin regarding when the change would take effect, she "laughed in [his] face and said it would never happen." (*Id.*). Plaintiff alleges that even though schedule changes are granted by seniority, another employee with less seniority than Plaintiff was given the schedule change. (*Id.*).

### D.    Supervisor Provocation

Plaintiff alleges that on January 3 of an unspecified year,[4] Plaintiff requested a meeting with Supervisor Latourette. (*Id.* at 8). She "began speaking to [Plaintiff] on the work line in a disrespectful and confrontational tone, which caused [him] significant distress." (*Id.*).

On February 27, 2023, Plaintiff alleges that Supervisor Latourette "began questioning [Plaintiff] in an aggressive and confrontational manner" while he was discussing a union matter with a timekeeper. (*Id.* at 19; *see also* Dkt. No. 24, at 1). Plaintiff "told her that the issue had nothing to do with her or the kitchen," but she "escalated the situation and insisted [Plaintiff] explain himself." (Dkt. No. 1, at 19). She called him into her office where "she began yelling at [him] about matters, [he] didn't understand." (*Id.*). He asked her to calm down and explained that he was recovering from a PTSD episode, but she "became more aggressive" and shouted, "[n]obody tells me to calm down in my office." (*Id.*).

Plaintiff alleges that Supervisor Griffin and Supervisor Latourette "[i]nteracted with [him] in ways meant to distress [him] and take advantage of [his] disability." (*Id.* at 11). In particular, he claims that Supervisor Griffin "was aware of [Plaintiff's] PTSD and deliberately attempted to provoke panic attacks, such as by standing behind [him] despite instructions from the previous chief not to do so." (*Id.*). Supervisor Latourette "consistently sided with [Supervisor] Griffin, providing no assistance or protection." (*Id.*).

### E.    Preferential Treatment

Plaintiff alleges that at some point during his employment, he requested permission to take a ServSafe exam for a food handler's certificate, but that he was denied. (*Id.* at 10). Plaintiff paid for his own exam, but "[s]hortly after[wards]," management began requiring all food

---

[4] Because Plaintiff alleges that the incidents he complains of occurred between "late 2022 through May 2023," (Dkt. No. 1, at 21), Plaintiff may be referring to January 3, 2023.

service workers to pass the ServSafe exam and paid the exam fees. (*Id.*). According to Plaintiff, he "studied diligently to earn [his] certificate, while others appeared to receive open-book tests or preferential treatment." (*Id.*). Plaintiff further alleges that his certificate, which was displayed somewhere along other certificates, was "torn down" on two occasions "without any investigation." (*Id.*). Plaintiff claims that the incident "caused [him] undue stress." (*Id.*).

On other unspecified occasions, Plaintiff alleges that other employees were treated more favorably than he was. He compares himself to his coworker, Arthur, who received light duty when he returned to work after recovering from a heart attack. (*Id.* at 15). Plaintiff alleges that even though he had "limitations related to [his] elbow," management told him that "no light duty assignments were available in the kitchen." (*Id.*). Plaintiff also compares his experience to another employee, Dominick, who had a documented knee problem, but was required to provide only a doctor's note rather than formally request a reasonable accommodation to be relieved from full performance of his responsibilities. (*Id.* at 14–15). Plaintiff claims that "despite having medical documentation supporting [his] need for accommodation due to [his] disability, [Plaintiff] was repeatedly assigned tasks that aggravated [his] condition." (*Id.* at 15).

F.    **Failure to Accommodate**

On July 23, 2022, Plaintiff asserts that while he was drinking broth to sooth his abscessed tooth, Supervisor Griffin told him to "[g]et up and go find something to do." (*Id.* at 15). After he informed her that he was in pain, she told him that if she saw him sitting down, she would "mark it down and [he] won't get paid." (*Id.* at 15). Plaintiff replied that he would go to the emergency room "if that was her intent." (*Id.*). Supervisor Griffin replied, "Bye. Have a nice day." (*Id.*). Plaintiff went to the emergency room where he was diagnosed with an abscessed tooth, treated, and advised to stay home from work for forty-eight hours to recover. (*Id.*).

Plaintiff reports that when he began calling out of work due to "severe mental health struggles, including symptoms [his] therapist identified as a nervous breakdown," he "found it extremely difficult to notify the VA Hospital each day" he would not attend work. (*Id.* at 11; *see also* Dkt. No. 1-17, at 2). Even though his therapist provided a letter in support of an unspecified reasonable accommodation,[5] Supervisor Latourette and other unnamed individuals sent Plaintiff "multiple threatening letters—both regular and certified mail—ordering [him] to return to work and threatening removal from federal service." (Dkt. No. 1, at 11; Dkt. No. 1-16; Dkt. No. 1-17). Plaintiff attached to the complaint a May 11, 2023 letter from Supervisor Latourette. (Dkt. No. 1-17). She stated that Plaintiff "failed to report to work since April 14, 2023"; she informed him that he was charged with "88 hours of Absence Without Leave (AWOL) and 40 hours of Annual Leave"; she directed him to return to work or contact her to request leave; and she stated that failure to properly request leave and or unauthorized absence "may lead to disciplinary action up to and including removal from federal service." (*Id.* at 2). Supervisor Latourette also noted that Plaintiff had indicated on May 9, 2023 that he was "absent for a medical reason." (*Id.*). She informed Plaintiff that he "may be entitled to a total of up to 12 workweeks of unpaid leave under the Family and Medical Leave Act (FMLA)," and provided Plaintiff with information about how to request such leave.

In general, Plaintiff alleges that "despite [his] doctor's clear instructions . . . [his employer] repeatedly assigned [him] to physically strenuous, back-to-back duties that contradicted [his] medical limitations." (*Id.* at 18). According to Plaintiff, Supervisor Latourette stated that he had no reasonable accommodations and "falsely claimed that [he] gave her

---

[5] It is not clear whether Plaintiff is referring to the letter written by a clinical psychologist, dated July 20, 2021, that was attached to his request for reasonable accommodations for his PTSD, (Dkt. No. 1-2, at 3–4), or whether he is referring to a different letter.

incomplete paperwork." (*Id.* at 20). In addition, even though his "PTSD accommodation did not have an expiration date . . . [Supervisor] Latourette told [him he] had to renew it anyway." (*Id.*).

### G.    Information Provided by Supervisor Benner to a Potential Employer

In April 2023, Plaintiff was being considered as a candidate for employment as a corrections officer with the Albany County Sheriff's Office. (*Id.* at 16; *see also* Dkt. No. 1-13). Plaintiff attached to his complaint a document entitled "Administrative Report" authored by Senior Investigator Joseph Lowry of the Albany County Sheriff's Office. (Dkt. No. 1-13). The report states that Plaintiff appeared for a personal interview on April 17, 2023, and describes the investigation Senior Investigator Lowry conducted into Plaintiff's background. (*See id.*).

Senior Investigator Lowry interviewed Supervisor Benner. Plaintiff alleges that during this interview, Supervisor Benner unlawfully disclosed Plaintiff's "confidential Reasonable Accommodation information." (Dkt. No. 1 at 16). The report reflects that Supervisor Benner reported that Plaintiff has "multiple restrictions that the employer has been required to accommodate." (Dkt. No. 1-13, at 1). Supervisor Benner said that he believes Plaintiff "does not handle stress well" and "has permission to leave work when he feels it's necessary." (*Id*).

The report reflects other information provided by Supervisor Benner. He recounted a time when Plaintiff became "irate" when he was not assigned a specific duty and left his shift when that duty was assigned to someone else (*Id.* at 1). He said that Plaintiff received a "Report of Contact" for abusing his accrued sick time and that it is considered to be AWOL according to the employment policy. (*Id.* at 1–2). In addition, he noted that Plaintiff's "mood swings . . . make the work environment difficult for staff members." (*Id.* at 1). According to Supervisor Benner, Plaintiff treats female staff in a "vulgar, disrespectful, and demeaning" way. (*Id.*). Ultimately, Supervisor Benner indicated that he would not recommend Plaintiff for hiring and would not

rehire him for his current position due to his "immaturity, mood swings and abuse of accrued sick time." (*Id.* at 2).

Plaintiff accuses Supervisor Benner of making false statements to Senior Investigator Lowry. (Dkt. No. 1, at 16–17).  He claims that Supervisor Benner's comment that Plaintiff is "vulgar and demeaning to female staff . . . contradict[s] [Plaintiff's] performance appraisal from [Supervisor Benner] himself." (Dkt. No. 1, at 17; *see also* Dkt. No. 1-12; Dkt. No. 1-13). He further alleges that Supervisor Benner is biased against Plaintiff's "mental health condition" by "[m]isinterpret[ing] symptoms of PTSD (e.g., emotional response, shutdowns) as personal immaturity." (Dkt. No. 1, at 16–17; *see also* Dkt. No. 1-13). Finally, Plaintiff asserts that Supervisor Benner told Senior Investigator Lowry that Plaintiff was "written up—contrary to official denials—further damaging his employment record and credibility." (Dkt. No. 1, at 17; Dkt. No. 1-13).

### H.    Constructive Discharge

Plaintiff claims that "[o]n or about May 23, 2023, [he] was "constructively discharged from [his] position at the VA Hospital." (Dkt. No. 1, at 14). Plaintiff alleges that his working conditions "had become so intolerable and hostile—largely due to ongoing retaliation for [his] protected activities and discrimination related to [his] disability—that [he] was forced to resign." (*Id.*).

### III.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face,'" *Mayor of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting

10

*Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

The complaint of a plaintiff proceeding pro se "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

## IV.    DISCUSSION

Plaintiff brings one count of disability discrimination under Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, alleging that Defendant discriminated against him on the basis of his disability. (Dkt. No. 1, at 3).  He brings one count of retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3, claiming that Defendant retaliated against him for engaging in protected activity, including "filing complaints and requesting accommodations." (*Id.*). In addition, he alleges that the cumulative effect of the conduct he was subjected to created a hostile work environment such that he was constructively discharged from his position in May 2023. (*See id* at 2–3.). Finally, Plaintiff alleges that Supervisor Benner unlawfully disclosed Plaintiff's confidential medical information. (*Id.* at 1–3).

### A.    Plaintiff Has Failed to Plausibly Allege a Rehabilitation Act Discrimination Claim

Defendant moves to dismiss Plaintiff's discrimination claim because Plaintiff fails to allege that he is disabled within the meaning of the Rehabilitation Act, he fails to plead that he suffered any adverse employment actions, and he does not allege that a disability is a but-for

11

cause of any adverse employment actions. (Dkt. No. 21-1, at 14–21). Plaintiff responds that he plausibly alleges that he suffers from two disabilities—PTSD and elbow injury—and that threats of discipline, public reprimands, targeted micromanagement, and delaying paperwork constitute adverse employment actions. (Dkt. No. 24, at 2).

Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, prohibits discrimination on the basis of disability in employment decisions by the federal government. *Lane v. Pena*, 518 U.S. 187, 193 (1996); *see also Colon v. Potter*, 51 F. App'x 43, 46 (2d Cir. 2002). Discrimination claims brought under the Rehabilitation Act are analyzed pursuant to the burden-shifting framework described in *McDonell-Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002) (analyzing claims of intentional discrimination under, inter alia, the ADA and the Rehabilitation Act under the *McDonnell-Douglas* framework), *superseded by statute on other grounds*, ADA Amendments of 2008, Pub.L. No. 110–325, 122 Stat. 3553. To state a prima facie case of employment discrimination under the Rehabilitation Act, the plaintiff must demonstrate that (1) the plaintiff's employer is subject to the Rehabilitation Act; (2) the plaintiff was disabled within the meaning of the Rehabilitation Act; (3) the plaintiff was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of his disability. *Quadir v. N.Y. State Dep't of Lab.*, 39 F. Supp. 3d 528, 540 (S.D.N.Y. 2014) (quoting *Jacques v. DiMarzio, Inc.,* 386 F.3d 192, 198 (2d Cir. 2004)).

As this motion is one to dismiss, however, the Court "focus[es] only on whether the allegations in the complaint give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a litigation." *Littlejohn v. City of New*

*York*, 795 F.3d 297, 312 (2d Cir. 2015). Thus, to defeat a motion to dismiss, "a plaintiff must plausibly allege that (1) the employer took adverse action against him," *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015); and (2) "that [he] would not have experienced the adverse employment action but for [his] . . . disability," *see Harris v. N.Y.C. Hum. Res. Admin.*, No. 20-cv-2011, 2022 WL 3100663, at *8, 2022 U.S. Dist. LEXIS 139134, at *17-18 (S.D.N.Y. Aug. 4, 2022); *see also Natofsky v. City of New York*, 921 F.3d 337, 346, 348 (2d Cir. 2019) ("[C]onclud[ing] that the Rehabilitation Act incorporates the ADA's causation standard for employment discrimination claims" and "that the ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action").

### 1.    Standard for a Qualifying Disability

The parties dispute whether Plaintiff's allegations of PTSD and an elbow injury plausibly allege a qualifying disability within the meaning of the Rehabilitation Act. (Dkt. No. 21-1, at 14; Dkt. No. 24, at 2).

"The Rehabilitation Act defines the term 'individual with a disability' by cross reference to the Americans with Disabilities Act." *Martinez v. N.Y. State Div. of Hum. Rts.*, No. 13-cv-1252, 2015 WL 437399, at *5, 2015 U.S. Dist. LEXIS 12536, at *14 (S.D.N.Y. Feb. 2, 2015) (citing 29 U.S.C. § 705(20)(B)). The ADA defines a "disability" as: (A) "a physical or mental impairment that substantially limits one or more major life activities of [an] individual" (the "actual disability" prong); (B) "a record of such an impairment" (the "record of" prong); or (C) "being regarded as having such an impairment" (the "regarded as" prong). 42 U.S.C. § 12102(1). To determine whether an individual has a disability under the Rehabilitation Act, courts utilize a three-step approach: a plaintiff must: (1) "show that [he] suffers from a physical or mental impairment"; (2) "identify the activity claimed to be impaired and establish that it constitutes a

13

'major life activity'"; and (3) "show that [his] impairment 'substantially limits' th[at] major life activity." *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 147 (2d Cir. 2002) (citing *Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 641 (2d Cir. 1998), *superseded by statute on other grounds*, 42 U.S.C. § 12102(3)(A)).

The Rehabilitation Act regulations broadly define "physical impairment" as, "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 45 C.F.R. § 84.4(b)(1)(i). A "mental impairment" is "any mental or psychological disorder such as intellectual disability, organic brain syndrome, mental health condition, and specific learning disability." 45 C.F.R. § 84.4(b)(1)(ii). "Major life activities are generally those activities that are of central importance to daily life." *Skinner v. City of Amsterdam*, 824 F. Supp. 2d 317, 326 (N.D.N.Y. 2010) (quoting *Cody v. County of Nassau*, 577 F. Supp. 2d 623, 638 (E.D.N.Y. 2008), *aff'd*, 345 F. App'x 717 (2d Cir. 2009)). They include functions such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking communicating, and working." 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(i). "[T]he substantial-limitation requirement in the definition of 'disability' is not an exacting one"; the term "substantially limits" is "construed broadly." *Hamilton v. Westchester County*, 3 F.4th 86, 92 (2d Cir. 2021) (quoting *Woolf v Strada*, 949 F.3d 89, 94 (2d Cir. 2020) and 28 C.F.R. § 35.108(d)(1)(i)).

To determine whether an impairment substantially limits a major life activity, courts compare the ability of the individual to perform the activity to most people in the general

14

population. *Federman v. NYSARC, Inc. - Jefferson Cnty. Chapter*, No. 25-cv-152, 2026 WL 734143, at *4, 2026 U.S. Dist. LEXIS 53263, at *10 (N.D.N.Y. Mar. 16, 2026) (citing 29 C.F.R.§ 1630.2(j)(2)(ii)). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting," however, "not every impairment will constitute a disability. *Martinez*, 2015 WL 437399, at *6, 2015 U.S. Dist. LEXIS 12536, at *16 (S.D.N.Y. Feb. 2, 2015) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

### a.    Plaintiff Has Failed to Plausibly Allege that His PTSD Is a Qualifying Disability

Defendant argues that Plaintiff fails to allege that his PTSD is a qualifying disability because "he fails to explain how [his PTSD] substantially limit[s] one or more of his major life activities or specify what symptoms he experienced and how those affected his ability to perform his job at the VA." (Dkt. No. 21-1, at 14–15). The Court agrees.

As the Defendant notes, the complaint does not contain any allegations describing how Plaintiff's PTSD substantially limits a major life activity. Nor can that be plausibly inferred from the documents Plaintiff attached to the complaint. Plaintiff attached a report and letter, both dated July 20, 2021, from a psychologist who assessed Plaintiff in support of his request for a reasonable accommodation. (Dkt. No. 1-2). Plaintiff also included his July 4, 2021 accommodation request which includes a "request for medical documentation" that appears to be completed by the same doctor. (Dkt. No. 1-4). In response to an inquiry regarding "the nature, severity, and duration of the impairment," the doctor wrote, "PTSD, chronic" and "severe impairments," with a list of impairments, but did not include any information regarding frequency, duration, or severity. (*Id.* at 2). Under the prompt, "the extent or degree to which the impairment limits an activity," the doctor wrote, "PTSD contributes to significant impairment

15

when activated." (*Id.* at 3). There are, however, no allegations in the complaint regarding the frequency, duration or severity of Plaintiff's PTSD or of any limitations on a major life activity caused by Plaintiff's PTSD. Thus, the Court can not plausibly infer that Plaintiff's PTSD substantially limits a major life activity, and he has not plausibly alleged that his PTSD is a qualifying disability within the meaning of the Rehabilitation Act. *See Pineda v. ESPN, Inc.*, No. 18-cv-325, 2018 WL 5268123, at *3–4, 2018 U.S. Dist. LEXIS 181508, at *9-10 (D. Conn. Oct. 23, 2018) (finding that the plaintiff failed to allege a qualifying disability where she did not specify how her PTSD symptoms "impacted her ability to perform her job" or "provide any factual support detailing the frequency, duration, or severity of any limitations on a life activity caused by her PTSD" (quoting *Cain v. Mandl Coll. of Allied Health*, No. 14 Civ. 1729, 2017 WL 2709743, at *4, 2017 U.S. Dist. LEXIS 96917, at *8 (S.D.N.Y. June 22, 2017))); *Cain*, 2017 WL 2709743, at *4, 2017 U.S. Dist. LEXIS 96917, at *8 ("Vague, conclusory assertions without details on how [the plaintiff's] condition actually affects a major life activity are insufficient.").

### b.  Plaintiff Has Failed to Plausibly Allege that His Elbow Impairment Is a Qualifying Disability

Defendant argues that Plaintiff fails to allege that his elbow impairment is a qualifying disability within the meaning of the Rehabilitation Act for the same reason as his PTSD: because "he fails to explain how [the elbow impairment] substantially limit[s] one or more of his major life activities or specify what symptoms he experienced and how those affected his ability to perform his job at the VA." (Dkt. No. 21-1, at 14–15). The Court agrees.

Plaintiff attached two written requests for reasonable accommodations related to his elbow injury, one dated November 28, 2022 and the other dated April 7, 2023. (Dkt. No. 1-5; Dkt. No. 1-6). The accompanying medical documentation on each form indicates that Plaintiff suffered from "left elbow pain" and "left elbow lateral epicondylitis." (Dkt. No. 1-5, at 2; Dkt.

16

No. 1-6, at 2). On his accommodation request forms, Plaintiff reported that "some actions of repetitive motion cause [his] left elbow to become very painful and swell." (Dkt. No. 1-5, at 1; Dkt. No. 1-6, at 1). Plaintiff requested that he "not have to pass trays or start twice in one day or on consecutive days." (*Id.*). These requests were supported by doctors. (Dkt. No. 1-5, at 2–5); Dkt. No. 1-6, at 2–3)

Plaintiff's elbow injury—lateral epicondylitis, or "tennis elbow"—is an injury to the tendon, a part of the body's musculoskeletal system. *Tennis Elbow (Lateral Epicondylitis)*, Cleveland Clinic (July 21, 2025), https://my.clevelandclinic.org/health/diseases/7049-tennis-elbow-lateral-epicondylitis#what-is-tennis-elbow, [https://perma.cc/SPB2-AJUX]; *Muscle and Bone Diseases*, National Institute of Arthritis and Musculoskeletal and Skin Diseases (June 2025), https://www.niams.nih.gov/health-topics/muscle-bone-diseases, [https://perma.cc/89WZ-2UHA].  It often arises from overuse of the tendon that connects the forearm muscles to the elbow, resulting in inflammation on the lateral side of the elbow and causing pain. *Tennis Elbow (Lateral Epicondylitis)*, *supra*. Thus, tennis elbow is a physical impairment because it is a physiological condition affecting the musculoskeletal system. *See Cella v. Villanova Univ.*, 113 F. App'x 454, 455 (3d Cir. 2004) (finding that the plaintiff's tennis elbow qualifies as a physical impairment under the ADA).

The medical documentation Plaintiff attached to his complaint indicates that his elbow injury affects lifting, a major life activity, *see Concepcion v. Continuum of Care*, No. 17-cv-1854, 2018 WL 6529178, at *4, 2018 U.S. Dist. LEXIS 209402, at *11 (D. Conn. Dec. 12, 2018) (quoting 42 U.S.C. § 12102(2)(A)), and passing trays, a repetitive motion. Plaintiff's treating physician recommended a restriction of lifting no more than twenty pounds. (Dkt. No. 1-5, at 3; Dkt. No. 1-6, at 3). However, Plaintiff has failed to allege any facts from which the Court could

17

plausibly infer that this impairment substantially limited lifting or any other major life activities. Many courts in this circuit have held that similar weight limitations are insufficient as a matter of law to establish a substantial limitation on lifting or other major life activities. *See McDonald v. City of New York*, 786 F. Supp. 2d 588, 609 (E.D.N.Y. 2011) (finding no genuine issue of material fact that on whether a lifting restriction of more than twenty pounds substantially limits the major life activity of lifting) (collecting cases)*; see also Amador v. Macy's E.-Herald Square*, No. 12-cv-4884, 2014 WL 5059799, at *15,  2014 U.S. Dist. LEXIS 145852, at *42 (S.D.N.Y. Oct. 3, 2014) (collecting cases to show that an inability to lift more than ten to fifteen pounds is not a substantial limitation on lifting or carrying). In addition, courts in this circuit have found that "limitations on repetitive motion [similar to carpal tunnel syndrome] do not substantially limit a major life activity." *Ruhling v. Trib. Co.*, No. 04-cv-2430, 2007 WL 28283, at *12, 2007 U.S. Dist. LEXIS 116, at *38 (E.D.N.Y. Jan. 3, 2007) (collecting cases).

### 2.     Plaintiff Has Failed to Plausibly Allege an Adverse Employment Action

"To qualify as an adverse employment action, the employer's action toward the plaintiff must be 'materially adverse' with respect to the 'terms and conditions of employment.'"[6] *Davis v. N.Y.C.  Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). The change in the terms and conditions of employment must be:

---

[6] Because what qualifies as an adverse employment action under the Rehabilitation Act is the same as under other employment discrimination statutes, the Court considers caselaw under other employment discrimination statutes in determining whether the incidents Plaintiff complains of are adverse employment actions. *See Adams v. New York State Dep't of Corr. & Cmty. Supervision*, No. 23-CV-05524, 2025 WL 1677347, at *4 n.5, 2025 U.S. Dist. LEXIS 113079, at *11 n.5 (E.D.N.Y. June 13, 2025) ("[C]ourts in this Circuit define an 'adverse employment action' under the Rehabilitation Act 'just as [they do] under other employment discrimination statutes." (alteration in original) (citing *Carter v. Potter*, No. 06-cv-3854, 2008 WL 1848639, at *3, 2008 U.S. Dist. LEXIS 33423, at *9–10 (E.D.N.Y. Apr. 23, 2008))).

> more disruptive than a mere inconvenience or an alteration of job responsibilities and might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities or other indices . . . unique to a particular situation.

*Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71–72 (2d Cir. 2019) (quoting *Patrolmen's Benevolent Ass'n of City of N.Y. v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002)). "Actions that are 'trivial harms'—*i.e.*, 'those petty slights or minor annoyances that often take place at work and that all employees experience'—are not materially adverse." *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

### a.    False Accusations

Plaintiff alleges that Supervisor Latourette discriminated against Plaintiff with regard to how she handled the allegations that Plaintiff was taking photographs of his coworker, (*see* Dkt. No. 1, at 6), and the allegations that Plaintiff was gossiping about a supervisor's failure to pass the ServSafe exam, (*see id.*). However, Plaintiff has not alleged any further action that has resulted from these alleged false accusations. Courts in this circuit have held on numerous occasions that false accusations, without more, are not adverse employment actions. *See Karatzas v. Herricks Union Free Sch. Dist.*, No. 15-cv-2888, 2017 WL 3084409, at *18, 2017 U.S. Dist. LEXIS 112397, at *50 (E.D.N.Y. July 18, 2017) ("In general, neither false accusations of wrongdoing nor negative reports or performance evaluations are sufficient to constitute adverse employment actions, unless they give rise to material adverse changes in the Plaintiff's work conditions.") (collecting cases); *Pawlow v. Dep't of Emergency Servs. & Pub. Prot.*, 172 F. Supp. 3d 568, 576 (D. Conn. 2016) (finding that the plaintiff had not sufficiently alleged an adverse employment action in the context of a discrimination claim under Title VII, in part because she did not allege "whether the 'accusation of insubordination' has had any effect on her

19

employment, whether the effect is serious, whether it has been added to her employment file, or whether it was verbal or in writing."). As to Supervisor Latourette's alleged lack of investigation, "the case law is clear that supervisory inaction is not, by itself, an adverse employment action." *McGrier v. Cap. Cardiology*, No. 20-cv-01044, 2022 WL 2105854, at *12, 2022 U.S. Dist. LEXIS 103784, at *32 (N.D.N.Y. June 10, 2022) (finding that a failure of supervisors to investigate harassment and bullying by coworkers is not by itself an adverse action where the harassment and bullying related to personal disputes rather than due to membership in a protected class). Thus, the instances regarding alleged false allegations in support of Plaintiff's discrimination claim are insufficient to show adverse employment actions.

### b.    Threats of Discipline

Plaintiff alleges that his supervisors threatened to mark him down as "AWOL" on different occasions, which "targets [him] on the basis of known disability-related behaviors." (Dkt. No. 1, at 5, 7). However, Plaintiff did not receive any formal discipline. (*Id.*). Plaintiff claims that Supervisor Latourette threatened him with termination for continuing to leave work, including through letters ordering him to return to work and threatening removal from federal service. (*Id.* at 11–12). In addition, Plaintiff alleges that Supervisor Griffin discriminated against Plaintiff by threatening to "mark" him down while he was drinking broth to sooth his abscessed tooth. (*Id.* at 15–16).

Threats of disciplinary action—even threats of termination—without more generally do not constitute adverse employment actions. *Barton v. Warren County*, No. 19-cv-1061, 2021 WL 6107937, at *6, 2021 U.S. Dist. LEXIS 246236, at *19 (N.D.N.Y. Apr. 8, 2021); *Todoverto v. McDonald*, No. 13 Civ. 4922, 2016 WL 3826281, at *11, 2016 U.S. Dist. LEXIS 88689, at *39 (S.D.N.Y. July 7, 2016). "Further, a threat of possible discipline for an unexcused absence at work does not constitute a material change in the terms and conditions of employment to

20

constitute an adverse employment action." *Impellizzeri v. New York*, No. 17-cv-230, 2021 WL 4844275, at \*5, 2021 U.S. Dist. LEXIS 199779, at \*16 (N.D.N.Y. Oct. 18, 2021) (emphasis omitted) (citing *Chang v. Horizons*, 254 F. App'x 838, 839 (2d Cir. 2007) (noting that "oral and written warnings do not amount to materially adverse conduct"), *aff'd*, No. 21-2828-cv, 2023 WL 2171018, 2023 U.S. App. LEXIS 4256 (2d Cir. Feb. 23, 2023). Because Plaintiff did not experience any consequences based on these incidents, he has not plausibly alleged any adverse employment actions.

### c.       Interference with Leave and Other Scheduling

Plaintiff alleges that his supervisors interfered with him taking leave. Plaintiff claims that in February 2023, Supervisor Benner would not accept Plaintiff's medical clearance to return to work, and that he accused Plaintiff of not returning to work after receiving clearance. (*See* Dkt. No. 1, at 13–14). On another occasion, Plaintiff alleges that he was denied leave to attend victim impact statement meetings related to a family member who was the victim of a crime. (*See id.* at 7).

Supervisor Benner's refusal to accept Plaintiff's medical clearance after returning from medical leave is not an adverse employment action. Plaintiff alleges that he was paid for the two days Supervisor Benner would not accept his clearance. (*Id.* at 13). Plaintiff has not alleged that he experienced any materially adverse change in the conditions of his employment as a result of this incident—such as termination, a demotion, or a material loss of benefits—which is necessary to give rise to an adverse employment action. *See Fox*, 918 F.3d at 71–72; *cf. Levitant v. City of N.Y. Hum. Res. Admin.*, 914 F. Supp. 2d 281 (E.D.N.Y. 2012) (granting judgment as a matter of law to the employer on the plaintiff's Title VII retaliation claim because, inter alia, plaintiff did not present any evidence that "he lost any salary, rank, or benefits" or other negative employment actions as a result of his employer's weeklong delay in reassigning plaintiff after he

21

returned from medical leave), *aff'd*, 558 Fed. App'x. 26 (2d Cir. 2014). Therefore, Plaintiff does not plausibly allege that he suffered an adverse employment action with respect to the incident involving Supervisor Benner.

Likewise, Plaintiff's allegations that he was denied leave to attend events related to his victim impact statement are insufficient to show an adverse employment action. "[D]enial of leave does not constitute an adverse employment action because it is not a materially adverse change in the terms, conditions, or privileges of employment." *Hamilton v. Siemens Healthcare Diagnostics, Inc.*, No. 23-cv-7408, 2025 WL 863572, at *10, 2025 U.S. Dist. LEXIS 52886, at *27 (S.D.N.Y. Mar. 18, 2025); *Chukwuka v. City of New York*, 795 F. Supp. 2d 256, 261 (S.D.N.Y. 2011) ("In general, the denial of vacation time does not generally rise to the level of an adverse employment action."), *aff'd* 513 F. App'x 34 (2d Cir. 2013).

### d.   Supervisor Provocation

Plaintiff alleges that Supervisor Griffin "deliberately attempted to provoke panic attacks" by "standing behind" Plaintiff despite instructions from a previous chief not to do so, and that Supervisor Latourette did not provide any "assistance or protection." (*See* Dkt. No. 1, at 11).

Excessive scrutiny or micro-management is not an actional adverse employment action. *See Ortiz v. Metro. Transp. Auth.*, No. 13-cv-1033, 2014 WL 11460929, at *9, 2014 U.S. Dist. LEXIS 200601, at *24 (S.D.N.Y. Sep. 30, 2014), *aff'd*, 615 Fed. Appx. 702 (2d Cir. 2015); *see also Figueroa v. City of New York*, 198 F. Supp. 2d 555, 568 (S.D.N.Y. 2002) (ruling that "[b]eing followed by supervisors" is not an adverse employment action), *aff'd*, 118 Fed. Appx. 524 (2d Cir. 2004). Because Plaintiff has failed to provide any other facts from which the Court could infer that this rose to the level of an adverse employment action, he fails to allege that Supervisor Griffin's conduct amounts to a materially adverse employment action.

22

Plaintiff also alleges that Supervisor Latourette confronted him on two occasions. Once by "speaking to [him] on the work line in a disrespectful and confrontational tone," (*see* Dkt. No. 1, at 8–9), and another time when she questioned him in an "aggressive and confrontational manner" (*see id.* at 19). These actions do not rise to the level of an adverse employment action. *See Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (finding that "unprofessional and boorish" behavior from a supervisor does not amount to an adverse employment action); *Ahmad v. N.Y.C. Health & Hosps. Corp.*, No. 20 Civ. 675, 2021 WL 1225875, at *22, 2021 U.S. Dist. LEXIS 62986, at *63 (S.D.N.Y. Mar. 31, 2021) ("[M]erely being yelled at does not give rise to the level of adverse employment action." (quoting *Rugg v. City of New York*, No. 18 Civ. 9762, 2019 WL 3242493, at *5, 2019 U.S. Dist. LEXIS 113857, at *12 (S.D.N.Y. July 8, 2019))); *Culmone-Simeti v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 2313, 2018 WL 3384437, at *7, 2018 U.S. Dist. LEXIS 115270, at *18 (S.D.N.Y. July 11, 2018) (finding that the plaintiff's allegations that "she was subjected to disrespectful and condescending behavior, such as being 'shushed'" do not qualify as materially adverse employment actions because "'trivial harms'—i.e., 'those petty slights or minor annoyances that often take place at work and that all employees experience'—do not qualify as 'materially adverse' employment actions" (quoting *Leon v. Dep't of Educ.*, No. 15 Civ. 7275, 2017 WL 1157146, at *7, 2017 U.S. Dist. LEXIS 45112, at *16 (S.D.N.Y. Mar. 27, 2017))); *Florence v. Studco Bldg. Sys. US, LLC*, No. 14-cv-6426, 2015 WL 2406114, at *2, 2015 U.S. Dist. LEXIS 66024, at *5 (W.D.N.Y. May 20, 2015) ("However, feeling that one has been disrespected by a co-worker or supervisor is not enough to establish an actionable discrimination claim.").

e.    **Denial of Permission to take the ServSafe Exam**

Plaintiff alleges that he was denied permission to take the ServSafe exam for a food handler's certificate, but that after he self-funded the exam, management reversed course and

required all food service workers to pass the exam and paid for it. (*See* Dkt. No. 1, at 10). Plaintiff has not alleged that his employer's refusal to pay for his exam had any broader effect on his employment, such as being denied a promotion. Thus, Plaintiff's allegations with respect to this incident do not plausibly allege that he suffered an adverse employment action. *See Carpenter v. City of Mount Vernon*, 198 F. Supp. 3d 272, 279–80 (S.D.N.Y. 2016) (finding that the plaintiff failed to allege that she suffered an adverse employment action when denied training because she did not suffer material harm, "i.e., that the denial affects the employee's opportunities for career growth or the employee's compensation—such as failure to promote or loss of career advancement opportunities"); *Freeman v. Dep't of Env't Prot.*, No. 10-cv-1555, 2013 WL 817221, at *6, 2013 U.S. Dist. LEXIS 31079, at *22 (E.D.N.Y. Feb. 5, 2013) (finding that the plaintiff did not suffer an adverse employment action due to denial of training because she did not offer any evidence that the lack of training resulted in a lost promotion, reduced compensation, or affected her employment prospects), *report and recommendation adopted*, No. 10-cv-1555, 2013 WL 801684, 2013 U.S. Dist. LEXIS 31077  (E.D.N.Y. Mar. 5, 2013).

Because Plaintiff has failed to plausibly allege a disability or an adverse action, his discrimination claim under the Rehabilitation Act must be dismissed.[7]

### B.       Plaintiff Has Failed to Plausibly Allege a Failure to Accommodate Claim

To the extent Plaintiff seeks to allege a failure to accommodate claim, that claim also fails. A failure to accommodate claim requires a plaintiff to establish that "(1) [the plaintiff] is a person with a disability under the meaning of [the statute in question]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could

---

[7] Because Plaintiff has failed to plausibly allege either a qualifying disability or an adverse action, the Court does not need to reach Defendant's argument that Plaintiff has failed to plausibly allege causation, i.e. that he suffered an adverse action *because of* his disability. (Dkt. No. 21-1, at 20).

perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Natofsky*, 921 F.3d at 352 (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)).

Here Plaintiff has failed to plausibly allege that he has a disability. Moreover, he alleges that he has a reasonable accommodation allowing him to "leave work when under high stress or experiencing symptoms." (Dkt. No. 1, at 19). Even if Plaintiff had plausibly alleged a qualifying disability, his allegations that Supervisor Latourette's "actions—including delaying paperwork, misrepresenting facts, and imposing extra requirements . . . prevented [Plaintiff] from receiving legally protected accommodations," (Dkt. No. 1, at 20), are insufficient because they are conclusory and lack detail.

### C.       Plaintiff Has Failed to Plausibly Plead a Rehabilitation Act Retaliation Claim[8]

Defendant moves to dismiss Plaintiff's retaliation claim on the grounds that Plaintiff "pleads no facts which would tend to show that his employer took any adverse actions against Plaintiff or that any causal connections exist between his purported protected activity and the adverse actions." (Dkt. No. 21-1, at 22). The Court agrees.

The Rehabilitation Act prohibits "retaliation against a person for opposing any practice made unlawful by the Act." *Dodd v. City Univ. of N.Y.*, 489 F. Supp. 3d 219, 245 (S.D.N.Y. 2020) (citing 29 U.S.C. § 794(d); 29 C.F.R. § 1614.101(b)).  In order to make out a prima facie case of retaliation under the Rehabilitation Act, Title VII, or the ADEA, the plaintiff must allege that "(1) he participated in a protected activity; (2) the employer knew of the protected activity;

---

[8] Plaintiff brings a claim for retaliation under Title VII, alleging retaliation for "engaging in protected EEO activity, including filing complaints and requesting accommodations." (Dkt. No. 1, at 3). However, Title VII does not prohibit retaliation on the basis of a disability. *See Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 152 (E.D.N.Y. 2018). Out of deference to Plaintiff's pro se status, the Court liberally construes Plaintiff's claim for retaliation under the Rehabilitation Act instead of Title VII.

(3) he suffered a materially adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Mazzeo v. Mnuchin*, 751 F. App'x 13, 15–16 (2d Cir. 2018). Defendant argues that Plaintiff has failed to allege the third and fourth elements—adverse action and the requisite causal connection between a protected activity and an adverse action. (Dkt. No. 21-1 at 21).

### 1.    Protected Activity

"'Protected activity' is '[an] action taken to protest or oppose statutorily prohibited discrimination.'" *Natofsky*, 921 F.3d at 354 (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000), *superseded on other grounds by* N.Y.C. Local L. No. 85). Complaints alleging any violation of the Rehabilitation Act or ADA, whether made formally or informally, constitute protected activity that can support a claim of employment retaliation.[9] *Conklin v. U.S. Immigr. & Customs Enf't*, 661 F. Supp. 3d 239 (S.D.N.Y. 2023) (citing *Frantti v. New York*, 414 F. Supp. 3d 257, 290-91 (N.D.N.Y. 2019)). In addition, "[s]eeking a reasonable accommodation for a disability constitutes protected activity under Section 504 of the Rehabilitation Act." *Payson v. Bd. of Educ. of Mount Pleasant Cottage Sch., USFD*, No. 14 Civ. 9696, 2017 WL 4221455, at *24, 2017 U.S. Dist. LEXIS 154296, at *76 (S.D.N.Y. Sep. 20, 2017) (citing *Weixel*, 287 F.3d at 149).[10]

---

[9] Plaintiff's EEOC complaint, filed *after* he resigned, cannot be the basis for the retaliation alleged to have occurred during his employment. *See Hayes v. Rockaway Ctr., LLC*, No. 22-CV-6613, 2024 WL 5715910, at *6, 2024 U.S. Dist. LEXIS 132656, at *17 (E.D.N.Y. July 26, 2024) (finding that the plaintiff's complaint with the EEOC could not form the basis for her retaliation claim under the ADA because she filed it after she was terminated).

[10] The Court notes that Plaintiff has failed to allege that filing a police report "regarding [Supervisor Griffin's husband's] suspicious behavior," (*see* Dkt. No. 1, at 5), and speaking to a co-worker about an unspecified "union matter," and "union issue," (*see id.* at 19), are protected activities. Filing a police report regarding a personal dispute is not protected activity under the Rehabilitation Act. *See Russell v. New York Univ.*, No. 15-CV-2185, 2017 WL 3049534, at *26 n.21, 2017 U.S. Dist. LEXIS 111209, at *105 n.21 (S.D.N.Y. July 17, 2017) ("the filing of a police report is typically not a protected activity for purposes of employment-discrimination laws . . . at least where the police report itself does not reference discrimination based on a protected characteristic"), *aff'd*, 739 F. App'x 28 (2d Cir. 2018). And Plaintiff has not alleged that he engaged in any union activity to protest or oppose discrimination. *Kramer v. Bessent*, No. 21-CV-3295, 2025 WL 2576482, at *24, 2025 U.S. Dist. LEXIS 172831, at *61 (E.D.N.Y. Sep. 4,

### 2.      Adverse Employment Action

Defendant argues that "[e]ven under the potentially more liberal standard for adverse action applicable to retaliation claims, the adverse actions about which Plaintiff complains" do not amount to adverse employment actions because "they would not have dissuaded a reasonable worker from making or supporting a charge of discrimination." (Dkt. No. 21-1, at 22).  Plaintiff responds that he faced adverse actions including "threats of termination, false AWOL accusations, disclosure of medical information, and intimidation by third parties connected to supervisors." (Dkt. No. 24, at 2).

"The adverse action inquiry is the same under the Rehabilitation Act, the ADA, Title VII, and the First Amendment." *Kelly v. N.Y. State Off. of Mental Health*, 200 F. Supp. 3d 378, 403 (E.D.N.Y. 2016) (citations omitted). In the retaliation context, an employment action is adverse where it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *White*, 548 U.S. at 57). "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination . . . [T]he antiretaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Vega*, 801 F.3d at 90 (quoting *White*, 548 U.S. at 64). To determine "whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts can be sufficiently 'substantial in gross' as to be actionable." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Zelnik v. Fashion Inst. of Tech.,* 464 F.3d 217, 227 (2d Cir.2006)).

---

2025) ("Protected activity is action taken to protest or oppose statutorily prohibited discrimination." (citing *Natofsky*, 921 F.3d at 354)).

### a.    False Accusations

Plaintiff alleges that Supervisor Griffin retaliated against him for filing a police report "regarding [her husband's] suspicious behavior" by falsely accusing Plaintiff of stealing a seafood salad sandwich. (Dkt. No. 1, at 5). Plaintiff also claims that Supervisor Latourette retaliated against Plaintiff with respect to how she handled the allegations that Plaintiff was taking photographs of his coworker. (*See id.* at 6, 12). However, even in the context of a retaliation claim, these false accusations are not adverse employment actions, and neither is supervisory inaction related to personal disputes. *See Hiralall v. Sentosacare, LLC*, No. 13 Civ. 4437, 2016 WL 1126530, at *12, 2016 U.S. Dist. LEXIS 35781, at *38 (S.D.N.Y. Mar. 18, 2016) ("Even when an accusation in a disciplinary notice is allegedly false, this Circuit has not found such false accusations, without more, to be a cognizable retaliatory adverse employment action." (citing *Cody*, 345 F. App'x at 719)); *McGrier*, 2022 WL 2105854, at *12,  2022 U.S. Dist. LEXIS 103784 at *33 (finding that the plaintiff did not suffer an adverse employment action where a director and a manger threatened to terminate the plaintiff after they accused him of lying, harassing, and bullying another employee); *Drouillard v. Sprint/United Mgmt. Co.*, 375 F. Supp. 3d 245, 270 (E.D.N.Y. 2019) (finding that plaintiff did not suffer an adverse employment action where her employer failed to take adequate corrective action against another employee's harassment because the plaintiff did not allege that the harassment resulted from participation in a protected activity).

### b.    Threats of Discipline

Plaintiff alleges that Supervisor Griffin retaliated against him for unspecified "prior protected activities" by threatening to mark him down as AWOL on October 25, 2022 for using the restroom, and that she threatened that he would not get paid if he did not work when he had an abscessed tooth. (Dkt. No. 1, at 5, 15-16). In addition, he alleges that Supervisor Latourette

retaliated against him for "reliance on protected accommodations" when she said, "If you plan on moving up in this kitchen, you can't keep going home. In fact, it could get your fired." (*Id.* at 19–20). Like in the discrimination context, a threat of disciplinary action without more does not constitute an adverse employment action on a retaliation claim. *Mitchell v. SUNY Upstate Med. Univ.*, 243 F. Supp. 3d 255, 279–80 (N.D.N.Y. 2017), *aff'd* 723 F. App'x 62 (2d Cir. 2018); *Lucenti v. Potter*, 432 F. Supp. 2d 347, 364 (S.D.N.Y. 2006) ("Reprimands, threats of disciplinary action, and excessive scrutiny do not constitute adverse employment actions" on retaliation claims).

### c.    Interference with Leave and Other Scheduling

Plaintiff alleges that his employer retaliated against him by denying leave to attend victim impact statement meetings related to a family member who was the victim of a crime. (Dkt. No. 1, at 7). Generally, denial of a day off for personal reasons is not an adverse employment action in the retaliation context. *See Clegg v. Coll. of Staten Island*, No. 17-cv-2777, 2021 WL 10351976, at *17, 2021 U.S. Dist. LEXIS 264150, at *49 (E.D.N.Y. Sep. 30, 2021) ("[F]acing difficulty in obtaining days off is not an adverse action for retaliation purposes." (citing *Green v. Mount Sinai Health Sys., Inc.*, 826 Fed. App'x 124, 126 (2d Cir. 2020))).

### d.    Supervisor Provocation

Plaintiff alleges that Supervisor Latourette retaliated against him for "prior protected activity" when she spoke to Plaintiff "in a disrespectful and confrontational tone, which caused [him] significant distress" on January 3 of an unspecified year. (Dkt. No. 1, at 8–9). On another occasion—February 27, 2023—he claims that Supervisor Latourette began questioning Plaintiff in an aggressive and confrontational way after she overheard him discussing a union matter with a timekeeper. (*Id.* at 19; Dkt. No. 24, at 1). He also claims that Supervisor Griffin continued to retaliate against Plaintiff for reporting her husband to the police by standing behind him, even

though the previous chief told her not to do so. (Dkt. No. 1, at 11). These actions are not adverse employment actions in the retaliation context. *Scott v. City of N.Y. Dep't of Corr.*, 641 F. Supp. 2d 211, 231 (S.D.N.Y. 2009) ("[V]erbal abuse is typically insufficient to constitute 'an adverse employment action' because '[n]egative or otherwise insulting statements are hardly even actions, let alone 'adverse actions''" (quoting *Blake v. Potter*, No. 03 Civ. 7733, 2007 WL 2815637, at *8, 2007 U.S. Dist. LEXIS 72703, at *19 (S.D.N.Y. Sep. 25, 2007))), *aff'd*, 445 F. App'x 389 (2d Cir. 2011); *Volpe v. N.Y.C. Dep't of Educ.*, 195 F. Supp. 3d 582, 597 (S.D.N.Y. 2016) ("[E]xcessive scrutiny not connected to a particular change in the terms and conditions of employment is not an adverse action in the context of retaliation claims.").

### e.    Negative Reference to Potential Employer

Plaintiff alleges that Supervisor Benner retaliated against him for unspecified "previous protected activities" when he spoke to Senior Investigator Lowry in April 2023, the person investigating Plaintiff for employment as a corrections officer. (Dkt. No. 1, at 17). Specifically, Plaintiff claims that Supervisor Benner "[d]efamed [his] character by accusing [him] of being vulgar and demeaning to female staff," which contradicts his performance appraisal from Mr. Benner, dated October 28, 2022. (*Id.* at 16–17; *see also* Dkt. No. 1-12). Plaintiff further alleges that Supervisor Benner told the investigator that Plaintiff had been written up "contrary to official denials." (Dkt. No. 1, at 17). Plaintiff also asserts that Supervisor Benner disclosed Plaintiff's accommodation, in violation of the confidentiality provision in the Rehabilitation Act, which is discussed infra § IV.E.

"[A] negative or false employment reference may be considered an adverse employment action." *Roberts v. Sage Corp.*, No. 20-cv-365, 2021 WL 3617670, at *6, 2021 U.S. Dist. LEXIS 153527, at *13 (N.D.N.Y. Aug. 16, 2021) (citing *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 178–79 (2d Cir. 2005)). However, "[t]here exist 'no bright-line rules' in this area, so 'courts

30

must pore over each case to determine whether the challenged employment action reaches the level of adverse.'" *Jute*, 420 F. 3d at 178 (quoting *Wanamaker v. Columbian Rope Co.* 108 F.3d 462, 466 (2d Cir. 1997)). Here, the allegations regarding Supervisor Benner's overall negative evaluation of Plaintiff's employment performance—purportedly contrary to official denials and a performance appraisal—and Senior Investigator Lowry's recommendation not to hire Plaintiff for the position based upon this interview plausibly allege that the negative reference was an adverse employment action. *See Calise v. Casa Redimix Concrete Corp.*, No. 20 Civ. 7164, 2022 WL 355665, at *6, 2022 U.S. Dist. LEXIS 20962, at *14 (S.D.N.Y. Feb. 4, 2022) (finding that the plaintiff adequately pled an adverse employment action arising out of a negative employment reference where the plaintiff's former boss told two potential employers not to hire the plaintiff and the employers attributed their refusal to hire the plaintiff to the boss's reference); *Corbett v. Napolitano*, 897 F. Supp. 2d 96, 112–13 (E.D.N.Y. 2012) (finding that a negative reference from the plaintiff's past employer to a potential employer qualifies as an adverse employment action).

### 3.   Causation

Defendant argues that "Plaintiff fails to allege any facts that meaningfully connect his informal EEO complaint to any of the employment actions he alleges were taken against him," and that he cannot "rely on any temporal proximity to establish a causal connection between his protected activity and the alleged adverse employment actions because he fails to allege when he engaged in a protected activity, and in many instances when the adverse employment actions occurred." (Dkt. No. 21-1, at 22–23). Plaintiff responds that he engaged in protected activity by "requesting accommodations, participating in union activity and reporting hostile treatment" and that he has alleged adverse employment actions. (Dkt. No. 24, at 2).

Under the Rehabilitation Act, causation may be shown "either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through

31

other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'"[11] *Natofsky*, 921 F.3d at 353 (quoting *Littlejohn*, 795 F.3d at 319). For indirect allegations of causation through temporal proximity alone, "the Supreme Court has suggested that the temporal proximity must be 'very close.'" *Dodd v. City Univ. of N.Y.*, 489 F. Supp. 3d 219, 247 (S.D.N.Y. 2020) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)); *see also Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016).

Here, Plaintiff fails to allege any facts from which the Court could plausibly infer a meaningful connection between any protected activity and the surviving adverse action—the negative reference. Plaintiff's conclusory assertions that Supervisor Benner's comments were retaliatory are not sufficient without factual allegations from which the Court could plausibly infer a causal connection. *Williams v. Westchester Med. Ctr. Health Network*, No. 21-cv-3746, 2022 WL 4485298, at *18, 2022 U.S. Dist. LEXIS 175332, at *46 (S.D.N.Y. Sep. 27, 2022).

Moreover, Plaintiff fails to allege any facts from which the Court could infer Supervisor Benner's retaliatory intent based on temporal proximity to protected conduct. The exhibits Plaintiff attached to his complaint show that he requested reasonable accommodations related to

---

[11] The Court notes that it is not clear whether the "but-for" causation standard applies to retaliation claims under the Rehabilitation Act. *See Stapleton v. New York City Dept. of Educ.,* No. 22-CV-09351, 2024 WL 4451304, at *11 n.13, 2024 U.S. Dist. LEXIS 166750, at *28 n.13 (S.D.N.Y. Apr. 18, 2024) ("Although it is clear that the but-for causation standard applies to claims of employment discrimination under the Rehabilitation Act . . . the Court does not read *Natofsky* as establishing a but-for causation standard for retaliation claims." (citing *Natofsky*, 921 F.3d at 349–53)), *report and recommendation adopted*, 2024 WL 4182602, 2024 U.S. Dist. LEXIS 165647 (S.D.N.Y. Sep. 13, 2024); *see also Mone v. New York State Unified Ct. Sys.*, No. 21-cv-6914, 2023 WL 4424093, at *11, 2023 U.S. Dist. LEXIS 107595, at *27 n.19 (E.D.N.Y. Mar. 22, 2023) ("The Second Circuit has not expressly decided whether ADA retaliation claims are governed by the same 'but-for' causation standard that applies to Title VII retaliation claims."), *report and recommendation adopted*, No. 21-CV-06914, 2023 WL 4073770, 2023 U.S. Dist. LEXIS 106616 (E.D.N.Y. June 20, 2023), *aff'd*, No. 23-964-CV, 2024 WL 1109258, 2024 U.S. App. LEXIS 6115 (2d Cir. Mar. 14, 2024); *Paola v. DeJoy*, 624 F. Supp. 3d 305, 322 (W.D.N.Y. 2022) ("For Plaintiff's Rehabilitation Act retaliation claim, '[a]lthough the law in this Circuit is unsettled as to the causation standard imposed in . . . Rehabilitation Act retaliation claims, most courts have nevertheless imported the but-for causation standard . . . .'" (quoting *Sears-Barnett v. Syracuse Cmty. Health Ctr., Inc.*, 531 F. Supp. 3d 522, 543 (N.D.N.Y. 2021))).

his PTSD on July 20, 2021, (*see* Dkt. No. 1-2, at 3), and for his elbow injury on July 14, 2021, and November 28, 2022, (*see* Dkt. Nos. 1-4 to 1-5). Plaintiff does not allege when he submitted an informal EEO complaint. Nor does he allege which protected activity was the cause of Supervisor Benner's alleged retaliatory negative job reference in April 2023. Absent any such facts, there is no basis for the Court to infer retaliatory animus based on temporal proximity between the negative job reference and protected activity. *See Williams* 2022 WL 4485298, at *18, 2022 U.S. Dist. LEXIS 175332, at *46 (noting that courts have "dismissed claims where a plaintiff fails to allege any facts from which the length of delay [between the adverse action and the protected activity] may be gleaned"); *Ebo v. N.Y. Methodist Hosp.*, No. 12 Civ. 04432, 2016 WL 11750663, at *13 n.7, 2016 U.S. Dist. LEXIS 203826, at *37 n.7 (E.D.N.Y. Sep. 28, 2016) (finding that the plaintiff's "hodge-podge" of allegations cannot form the basis for a retaliation claim because she fails to identify what protected activity these actions were in retaliation for); *Ahmad v. White Plains City Sch. Dist.*, No. 18-cv-3416, 2019 WL 3202747, at *10, 2019 U.S. Dist. LEXIS 118032, at *35 (S.D.N.Y. July 16, 2019) ("Because plaintiff 'does not provide the date' he engaged in protected activity, it is 'impossible for the Court to determine the temporal proximity of the alleged retaliatory acts to the protected conduct.'" (quoting *Feliciano v. City of New York*, No. 14-cv-6751, 2015 WL 4393163, at *9, 2015 U.S. Dist. LEXIS 92623, at *26-27 (S.D.N.Y. July 15, 2015))).

### D.     Plaintiff Has Failed to Plausibly Plead a Hostile Work Environment Claim

Defendant moves to dismiss Plaintiff's hostile work environment claim because the complaint "lacks information about how frequently he was subjected to any purported anti-disability animus, as he does not allege the date or timeframe of many of the instances and interactions about which he complains" and that it "fail[s] to connect the various incidents about which he complains to his disability, which is fatal to his hostile work environment claims."

(Dkt. No. 21-1, at 24). Plaintiff argues that "[r]epeated yelling, threats, micromanagement, and intimidation of witnesses plausibly allege a hostile work environment" and that "[t]hreats by supervisors' spouses or significant others further escalate severity and pervasiveness." (Dkt. No. 24, at 2).

"The standard for pleading a hostile work environment claim under the Rehabilitation Act is the same as the standard under the ADA and Title VII." *Figueroa v. Garland*, No. 21-cv-7849, 2022 WL 17539114, at *8, 2022 U.S. Dist. LEXIS 220026, at *23 (S.D.N.Y. Dec. 6, 2022); *see also Fox*, 918 F.3d at 74 (employing standards applicable to Title VII hostile work environment claim to ADA hostile work environment claim); *Kelly*, 200 F. Supp. 3d at 399 (employing "the standards applicable to a hostile work environment claim in the Title VII context" to a hostile work environment claim brought under the Rehabilitation Act). "To establish a hostile work environment . . . a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.'" *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Plaintiff alleges that Supervisor Griffin "was aware of [his] PTSD and deliberately attempted to provoke panic attacks, such as by standing behind [him] despite instructions from the previous chief not to do so." (Dkt. No. 1, at 11). Plaintiff does not specify how frequently this occurred, or how long she stood behind him at any given time. He also claims that his supervisors made "threatening" comments to him, such as Supervisor Latourette's remark, "If you plan on moving up in this kitchen, you can't keep going home. In fact, it could get you fired," (*id.* at 19), and Supervisor Griffin's threat to "mark it down" if she saw Plaintiff sitting, after he explained to her that he was in pain from his abscessed tooth, (*id.* at 15).

This is not enough. Plaintiff has failed to allege facts from which the Court could plausibly infer that the workplace was sufficiently severe or permeated with discriminatory conduct to constitute a hostile work environment. *See Robinson v. Purcell Constr. Corp.*, 859 F. Supp. 2d 245, 254 (N.D.N.Y. 2012) (finding that "three to four comments" referencing the plaintiff's anxiety medication and "one or two additional comments that could be construed as negative assessments of her demeanor potentially caused by her anxiety, depression, or post-traumatic stress disorder or her medication," taken together with gender-based comments, were not sufficiently severe or pervasive to state a hostile work environment claim under the ADA).

Plaintiff has failed to allege that many of the incidents are connected in any way to disability discrimination. Instead, many of the incidents of conflict with his supervisors are "nothing more than the ordinary incidents of workplace supervision or run-of-the-mill workplace conflicts," rather than discriminatory harassment. *Krul v. DeJoy*, 705 F. Supp. 3d 5, 54 (N.D.N.Y. 2023).[12] Accordingly, Plaintiff's hostile work environment claim is dismissed. *See Gong v. City Univ. of N.Y.*, 846 F. App'x 6, 9 (2d Cir. 2021) (affirming dismissal of hostile work environment claim at motion to dismiss stage where "many of the alleged incidents lack any racial overtone"); *Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 25 (2d Cir. 2014) (dismissing complaint because "[e]ven assuming that the[] alleged events amounted to . . . [a] hostile work environment . . . the complaint did not plausibly allege that the [the defendant] discriminated against [the plaintiff] because of a perceived mental impairment, 'nor d[id] it set forth any factual circumstances from which a [disability ]-based motivation for such an action

---

[12] Incidents that Plaintiff has failed to connect to disability-based motivation include his dissatisfaction with how Supervisor Latourette handled the allegations that Plaintiff was photographing a coworker (*see* Dkt. No. 1, at 6, 12); the requirement of his supervisors to follow workplace procedures when seeking leave from work *(see id.* at 11, 13; see also Dkt. No. 1-16); two interactions in which Supervisor Latourette raised her voice at Plaintiff, (*see* Dkt. No, 1, at 8–9, 19), and disappointment with self-funding a ServSafe exam before management made them required and began paying for them, (*see id.* at 10).

35

might be inferred.'" (quoting *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007))); *Sotolongo v. N.Y. State Dep't of Motor Vehicles*, No. 19-cv-3282, 2020 WL 4261194, at *5, 2020 U.S. Dist. LEXIS 131033, at *13 (E.D.N.Y. July 24, 2020) ("[C]rucially, Sotolongo fails to allege that the treatment of which she complains was connected in any way to her protected status, which is fatal to her hostile work environment claim.").

### E.  Plaintiff Has Failed to Plausibly Plead a Constructive Discharge Claim

Defendant argues that Plaintiff's constructive discharge claim should be dismissed because he "fails to allege any facts that, if true, would show that the VA deliberately created a set of intolerable working conditions—based on anti-disability animus—aimed at forcing him to resign." (Dkt. No. 21-1, at 25). Plaintiff responds that "[a] reasonable person would find working conditions intolerable where supervisors threaten termination for disability-related behavior, disclose confidential medical information, and allow intimidation by connected third parties." (Dkt. No. 24, at 3).

"A constructive discharge occurs where an employer, rather than discharging an employee directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Ocasio v. Mohawk Valley Cmty. Coll.*, 20-cv-1355, 2021 WL 4477241, at *10, 2021 U.S. Dist. LEXIS 187890, at *28 (N.D.N.Y. Sept. 30, 2021) (citation modified) (quoting *Ryle v. Rehrig Pac. Co.*, 19-cv-1478, 2020 WL 6196144, at *10, 2020 U.S. Dist. LEXIS 195962, at *29 (N.D.N.Y. Oct. 22, 2020)). "[W]orking conditions are intolerable when, viewed as a whole, they are 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Terry v. Ashcroft*, 336 F.3d 128, 152 (2d Cir. 2003) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996)). "Constructive discharge claims are often premised on the same type of non-discrete conduct underlying a hostile work environment claim, although the standard for constructive discharge is higher."

36

*Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 309 (N.D.N.Y. 2013) (citing *Mandel v. Champion Int'l Corp.*, 361 F. Supp. 2d 320, 327 (S.D.N.Y. 2005)). Where the plaintiff fails to state a claim for a hostile work environment, constructive discharge claims on the same set of facts also fail. *See Rys v. Davis*, No. 25-857, 2026 WL 904990, at *5, 2026 U.S. App. LEXIS 9552, at *13 (2d Cir. Apr. 2, 2026) (citing *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010)). Therefore, because Plaintiff's hostile work environment claim fails, his constructive discharge claim also fails.

F.    **The Court Declines to Dismiss Plaintiff's Claim for Unlawful Disclosure of Medical Information**

Defendant moves to dismiss Plaintiff's claim under the Rehabilitation Act for unlawful disclosure of his confidential medical information because "it is not clear that any 'medical information' was actually disclosed" and "even if there was such disclosure, Plaintiff does not allege any 'tangible injury.'" (Dkt. No. 21-1, at 26). Plaintiff responds that disclosure of his "Reasonable Accommodations and medical conditions to a prospective employer violates ADA confidentiality provisions." (Dkt. No. 24, at 2).

The Rehabilitation Act incorporates by reference the medical examination and inquiry confidentiality provision in the ADA, 42 U.S.C. § 12112(d). *See* 29 U.S.C. §§ 791(f), 794(d); *see also Harrison v. SUNY Downstate Med. Ctr.*, No. 16-cv-1101, 2017 WL 4326507, at *2, 2017 U.S. Dist. LEXIS 160121, at *6 (E.D.N.Y. Sep. 25, 2017). This provision provides, inter alia, that "[a] covered entity may make inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B). Information "regarding the medical condition or history of any employee" made pursuant to this inquiry is "treated as a confidential medical record, except that . . . supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations." 42 U.S.C. §

37

12112(d)(4)(C), (3)(B); *see also* 29 C.F.R. § 1630.14(d)(4). The Equal Employment Opportunity Commission provides in its enforcement guidance regarding reasonable accommodations that "[a]n employer may not disclose that an employee is receiving a reasonable accommodation because this usually amounts to a disclosure that the individual has a disability." *U.S. Equal Employment Opportunity Comm'n, Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the ADA* ¶ 42 (Oct. 17, 2002), http://www.eeoc.gov/policy/docs/accommodation.html#N_101, [https://perma.cc/Y382-DCLX].

In addition to showing an unauthorized disclosure of medical condition or history, the plaintiff "must show that an unauthorized disclosure of medical information resulted in a 'tangible injury'" to state a claim under the Rehabilitation Act's confidentiality provisions. *Porfiri v. Eraso*, 121 F. Supp. 3d 188, 199 (D.D.C. 2015) (emphasis omitted) (citing *Koch v. Walter*, 935 F. Supp. 2d 164, 176 (D.D.C. 2013)); *see also Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 519 (3d Cir. 2001) (agreeing with other courts of appeals that found that the plaintiff must demonstrate "an injury-in-fact, either through actual damage (emotional, pecuniary, or otherwise), or through the presence of a continuing illegal practice to which plaintiff is likely to be subject absent court intervention" in order to state a cause of action for a violation of 42 U.S.C. § 12112(d)); *Cossette v. Minn. Power & Light*, 188 F.3d 964, 971 (8th Cir. 1999) (remanding for a determination as to whether the improper medical inquiry caused a "tangible injury" capable of supporting the suit); *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 562–64 (5th Cir. 1998) (dismissing a claim for damages from an allegedly improper medical examination for lack of cognizable injury).

Defendant argues that "it is not clear that any 'medical information' was actually disclosed." (Dkt. No. 21-1, at 26). But the confidentiality provision covers "medical condition or

38

history," and the alleged disclosure here was that Plaintiff "has multiple restrictions that the employer has been required to accommodate" and that he "has permission to leave work when he feels it's necessary." (Dkt. No. 1-13, at 3). Plaintiff alleges that he had a reasonable accommodation for PTSD, and the complaint includes the Defendant's reasonable accommodation form that includes a request for medical documentation regarding Plaintiff's PTSD. (Dkt. No. 1, at 19; Dkt. No. 1-4).

Defendant has not cited any case law addressing the disclosure of a reasonable accommodation, and at this preliminary stage of the case, the Court declines to find that these allegations of an unlawful disclosure of Plaintiff's medical information are insufficient. Moreover, Plaintiff has plausibly alleged an injury to his employability: the administrative report attached to the complaint states that he was not recommended for employment as a corrections officer, (Dkt. No. 1-13, at 3). *See Griffin v. Steeltek, Inc.*, 160 F.3d 591 (10th Cir. 1998) (finding that the plaintiff sufficiently alleged an injury in fact where he alleged that he was not hired due to his responses to unlawful medical inquiries from an employer and allowed his lawsuit for violations of 42 U.S.C. § 12112(d)(2)(A) to proceed). Therefore, the Court declines to dismiss Plaintiff's claim for unlawful disclosure of his medical information.

### G.    Leave to Amend

"Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000)). But a court may, in its discretion, deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (quoting *Bensch v. Est. of Umar*, 2 F.4th 70, 81 (2d Cir. 2021)).

In view of Plaintiff's pro se status and because the Court cannot say filing an amended complaint with additional factual allegations would be futile, the Court will permit Plaintiff to amend his complaint. *See Grabinski v. Portfolio Recovery Assocs., LLC*, No. 11-cv-9712, 2012 WL 1877251, at *1, 2012 U.S. Dist. LEXIS 78655, at *1–2 (S.D.N.Y. Apr. 19, 2012) ("[I]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.") (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Any such amended complaint will replace the existing complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977))). The body of Plaintiff's amended complaint must contain sequentially numbered paragraphs. Any exhibits that Plaintiff wishes the Court to consider going forward must be attached to the amended complaint. This means that the previous complaint and other filings will no longer be the operative documents—everything that is essential must be contained in or attached to the amended complaint.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 21) is **GRANTED in part**; and it is further

**ORDERED** that Plaintiff's cause of actions for discrimination, retaliation, hostile work environment, and constructive discharge are **DISMISSED without prejudice**; and it is further

**ORDERED** that Defendant's motion to dismiss Plaintiff's cause of action for unlawful disclosure of medical information is **DENIED**; and it is further

**ORDERED** that any amended complaint must be filed within thirty (30) days of the date of this Order; and it is further

**ORDERED** that if Plaintiff does not file an amended complaint within thirty (30) days of the date of this Order, Defendant is directed to file an answer to the complaint on or before October 2, 2026.

**IT IS SO ORDERED.**

Dated: <u>August 4, 2026</u>
      Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

41